E-FILED
Monday, 15 June, 2026  04:23:33 PM
Clerk, U.S. District Court, ILCD

## IN THE
## UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

MICHAEL WEIS,
    Plaintiff,

v.

                        Case No. 3:26-cv-03177-JEH

S. ANGEL, *et al.*,
    Defendants.

### Merit Review Order

Plaintiff, proceeding *pro se*, filed a Complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights while he was incarcerated at Graham Correctional Center ("Graham"). (Doc. 1). Plaintiff also filed a Motion for Preliminary Injunction. (Doc. 5). This case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A.

### I

In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## II

Plaintiff files suit against nurses S. Angel and M. West, Healthcare Unit Administrator ("HCUA") Megan Battles, Physician Assistant K. McMann, Advanced Practice Registered Nurse ("APRN") Lindsay Boehm, Dr. Arvinder Arora, and Dr. Berkman Gordon.

In approximately April 2025, Plaintiff began to experience lower back pain and sent a request to the HCU for medical care. On June 2, 2025, Plaintiff saw a nurse at sick call and was referred to Defendant APRN Boehm. On August 4, 2025, Plaintiff saw Defendant Boehm, who ordered an x-ray. Defendant Boehm informed Plaintiff the x-ray would not show soft tissue like an MRI, but she had to follow procedure. Plaintiff was prescribed Voltaren for arthritic pain and placed on the physical therapy line. Plaintiff received an x-ray between August 4, 2025 and September 4, 2025.

On September 4, 2025, Plaintiff saw Defendant Boehm to review the x-ray results and discuss the effectiveness of Voltaren. Defendant Boehm documented that Voltaren was helping with some issues but was not helping with Plaintiff's back pain. Defendant Boehm referred Plaintiff to physical therapy and instructed him to continue taking Voltaren.

During nurse sick call on October 9, 2025, Plaintiff told healthcare staff he was having trouble getting in and out of his bunk and going from a seated position to standing due to back pain and numbness in his legs.

On October 26, 2025, Plaintiff's back locked up, causing him to fall out of his bunk and bruise his hip and leg.

On November 1, 2025, Plaintiff went to his physical therapy appointment, and the therapist instructed him not to do activities due to his injury from the fall.

On November 6, 2025, Plaintiff was seen at nurse sick call about his back issue. Plaintiff was told he would be referred to a nurse practitioner soon.

On November 26, 2025, Plaintiff saw Defendant Boehm during the MD sick call line. Defendant Boehm stated Plaintiff would see a doctor in approximately two weeks. Defendant Boehm allegedly told Plaintiff there was no medical need for an MRI or bottom bunk permit and documented in her notes that Plaintiff was argumentative.

On December 20, 2025, Plaintiff filed a grievance asking for a medical screening, low bunk permit, and MRI.

On January 6, 2026, Plaintiff fell off his bunk a second time and broke his hand. Plaintiff was sent to the HCU. Defendant Nurse Angel allegedly informed Plaintiff he would not receive an MRI because it would cost $6,000. Defendant Angel took Plaintiff's vitals and placed him in a room to wait for the doctor. Defendant Dr. Gordon ordered an x-ray, which Plaintiff received on January 12, 2026.

On February 3, 2026, Plaintiff was sent to St. Francis Hospital in Litchfield, Illinois for medical treatment for his hand injury. Dr. Gregg Podleski, an orthopedic specialist, placed Plaintiff's hand in a cast. When Plaintiff returned to Graham, he was placed in the HCU for observation and security reasons due to the hard cast.

On February 5, 2026, Plaintiff returned to St. Francis Hospital due to swelling. The hard cast was removed and replaced with an EXOS soft cast.

On February 19, 2026, Plaintiff saw Dr. Podleski for a follow-up appointment. Dr. Podleski asked Plaintiff why he was not wearing his soft cast. Plaintiff advised that Defendant Nurse West told him to return his cast to the HCU. Plaintiff alleges Dr. Podleski recommended an MRI on February 19, 2026.

When Plaintiff returned to Graham on February 19, 2026, Plaintiff spoke with Defendant Dr. Arora, who advised that the MRI would not be ordered due to procedure and that she would schedule a follow-up appointment with

3

Defendant Dr. Gordon. Plaintiff also alleges Defendant Dr. Arora prescribed medication he was unable to take with his other prescribed medication. Plaintiff alleges the pharmacy informed him about this issue on February 24, 2026.

Plaintiff alleges he requested a copy of his medical records and discovered a progress note dated February 19, 2026, which stated that Defendant Battles was instructed to set a follow-up with St. Francis Hospital for the orthopedic specialist's recommendation of an MRI. The progress note also instructed Defendant Battles to set up a follow-up appointment with the outside provider, but Defendant Battles never scheduled the appointments.

On March 10, 2026, Plaintiff saw Defendant Physician Assistant McMann, who advised Plaintiff that Dr. Podleski had recommended an MRI. Defendant McMann allegedly told Plaintiff she would order the MRI and refer him back to Dr. Podleski. Defendant McMann also adjusted Plaintiff's pain medication.

On April 30, 2026, Plaintiff saw Defendant Dr. Gordon about his back pain. Defendant Dr. Gordon allegedly told Plaintiff all he could do was increase his Naproxen from 250 to 500 mg. Defendant Dr. Gordon stated he was unable to refer Plaintiff for any further testing or diagnosis and would follow up with Plaintiff in three months. Plaintiff told Defendant Dr. Gordon about the February 19, 2026 progress note, which allegedly indicated that Dr. Podleski had recommended an MRI. Plaintiff told Defendant Dr. Gordon that Defendant McMann informed him on March 10, 2026, that he would be referred for an MRI. Plaintiff also told Defendant Dr. Gordon he had been seen numerous times about his back pain over the last year. Defendant Dr. Gordon allegedly stated this information was irrelevant because he was seeing Plaintiff for the first time about his back issues and had to follow the facility's procedure.

4

## III

It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). A claim of deliberate indifference contains both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Id*. An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes*, 546 F.3d at 522. To satisfy the subjective component, the inmate must demonstrate that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. The official must know of and disregard an excessive risk to the inmate's health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The prisoner must show that the defendant engaged in more than negligence and that the defendant's conduct approached intentional wrongdoing or criminal recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 837).

"Within the universe of deliberate indifference cases is a narrower category where a prisoner alleges not that his condition was ignored entirely, but that he received constitutionally deficient treatment for the condition." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019). "[T]hese cases are better framed 'not [as] deliberate indifference to a serious medical need,' but as a challenge to 'a deliberate decision by a doctor to treat a medical need in a particular manner.'" *Id*. (citing *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)). In such cases, courts defer to a medical professional's treatment decisions "unless 'no minimally competent professional would have so responded under those circumstances.'" *Pyles v.*

*Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (quoting *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008)). Healthcare providers may exercise their medical judgment when deciding whether to refer a prisoner to a specialist. *Pyles*, 771 F.3d at 411-12. The failure to refer constitutes deliberate indifference only if it was "blatantly inappropriate." *Id.* Denying a referral in favor of "easier and less efficacious treatment" may be blatantly inappropriate if it does not reflect sound professional judgment. *Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016), *as amended* (Aug. 25, 2016).

**Defendant APRN Boehm**

Plaintiff alleges he saw Defendant Boehm about his back pain on August 4, 2025. She ordered an x-ray, prescribed Voltaren for arthritic pain, and placed Plaintiff on the physical therapy line.

Plaintiff saw Defendant Boehm again on September 4, 2025 to review the x-ray results and discuss the effectiveness of Voltaren. Plaintiff reported Voltaren was helping with some issues but not his back pain. Defendant Boehm referred Plaintiff for physical therapy and instructed him to continue taking Voltaren.

Plaintiff saw Defendant Boehm for a third time on November 26, 2025, after he fell from his top bunk due to his back issues. Defendant Boehm allegedly told Plaintiff there was no medical need for an MRI and refused to issue a bottom bunk permit.

The Court finds Plaintiff's allegations are sufficient to proceed on an Eighth Amendment claim against Defendant Boehm based on her alleged deliberate indifference to his back pain, failure to refer him for an MRI, and refusal to issue a bottom bunk permit.

**Defendant Nurse Angel**

Plaintiff alleges he saw Defendant Nurse Angel in the HCU after he fell from his bunk on January 6, 2026. Defendant Angel allegedly told Plaintiff an MRI

6

would cost $6,000, took Plaintiff's vitals, and placed him in a room to see Defendant Dr. Gordon.

As a nurse, Defendant Angel did not have the authority to refer Plaintiff for an MRI. Plaintiff's sparse allegations against Defendant Angel are insufficient to state a deliberate indifference claim. Defendant Angel is dismissed without prejudice for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6) and § 1915A.

**<u>Defendant Nurse West</u>**

When Dr. Podleski asked Plaintiff why he was not wearing his soft cast on February 19, 2026, Plaintiff reported that Defendant Nurse West told him to return the cast to the HCU. Plaintiff alleges Defendant West knew he was supposed to wear the soft cast because Defendant West documented in a progress note dated February 12, 2026, that Dr. Podleski had instructed the HCU to advise Plaintiff to wean off the brace at his own pace. As such, asking Plaintiff to return the cast to the HCU went against Dr. Podleski's recommendation. The Court finds Plaintiff's allegations are sufficient to proceed on an Eighth Amendment claim against Defendant West based on her alleged deliberate indifference to Plaintiff's hand injury.

**<u>Defendant Dr. Arora</u>**

When Plaintiff returned to Graham after his follow-up appointment with Dr. Podleski on February 19, 2026, he was seen by Defendant Dr. Arora, who allegedly told Plaintiff that she would not order an MRI and would schedule a follow-up appointment with Defendant Dr. Gordon. Plaintiff also alleges that Defendant Dr. Arora prescribed medication he was unable to take with his other prescribed medication. Plaintiff alleges the pharmacy informed him about this issue on February 24, 2026. Plaintiff does not allege that Defendant Dr. Arora knew he was unable to take the prescription. Plaintiff's sparse allegations against

Defendant Dr. Arora are insufficient to proceed on a deliberate indifference claim. Defendant Dr. Arora is dismissed without prejudice for failure to state a claim for relief under Rule 12(b)(6) and § 1915A.

**Defendant HCUA Battles**

Plaintiff alleges Defendant Battles was instructed to set a follow-up with St. Francis Hospital for the orthopedic specialist's recommendation of an MRI. The progress note dated February 19, 2026 also instructed Defendant Battles to set up a follow-up appointment with the outside provider, but Defendant Battles never scheduled the appointments. The Court finds that Plaintiff's allegations are sufficient to proceed on an Eighth Amendment deliberate indifference claim against Defendant Battles.

**Defendant Physician Assistant McMann**

On March 10, 2026, Defendant McMann allegedly told Plaintiff she would order an MRI and schedule a follow-up with Dr. Podleski. However, Defendant McMann then documented "will consider need for MRI" on her progress note. The Court finds Plaintiff's sparse allegations against Defendant McMann are insufficient to proceed on a deliberate indifference claim. Defendant McMann is dismissed without prejudice for failure to state a claim for relief under Rule 12(b)(6) and § 1915A.

**Defendant Dr. Gordon**

Plaintiff saw Defendant Dr. Gordon about his back pain on April 30, 2026. Plaintiff alleges Defendant Dr. Gordon refused to provide medical care for his back pain, which had been ongoing for a year. The Court finds Plaintiff's allegations are sufficient to proceed on an Eighth Amendment claim against Defendant Dr. Gordon based on his deliberate indifference to Plaintiff's back pain on April 30, 2026.

## IV

On June 12, 2026, Plaintiff filed a Motion for Preliminary Injunction requesting an Order directing Graham medical staff to provide certain treatment. (Doc. 5). Specifically, Plaintiff asks the Court to order medical staff to (1) refer him to St. Francis Hospital in Litchfield, Illinois for an MRI pursuant to Dr. Podleski's recommendation on February 19, 2026, and (2) issue a bottom bunk permit to prevent further injury.

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997); *accord Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right"). To prevail, "the moving party must demonstrate: (1) a likelihood of success on the merits; (2) a lack of an adequate remedy at law; and (3) an irreparable harm will result if the injunction is not granted." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003) (citations omitted). If the moving party meets the first three requirements, then the district court balances the relative harms that could be caused to either party. *Incredible Tech., Inc. v. Virtual Tech., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005).

The Prisoner Litigation Reform Act ("PLRA") limits the scope of the court's authority to enter an injunction in the corrections context. *Westefer v. Neal,* 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *see also Westefer,* 682 F.3d at 683 (the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and

discretionary authority over the institutions they manage." (internal quotation marks and citation omitted)).

The purpose of a temporary restraining order and ultimately a preliminary injunction is to preserve the status quo pending a final hearing on the merits of the case. *Am. Hosp. Ass'n v. Harris*, 625 F.2d 1328, 1330 (7th Cir. 1980). The relief Plaintiff seeks here is different. The Seventh Circuit has described the type of injunction Plaintiff seeks, where an injunction would require an affirmative act by the defendant, as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued," because they require the court to command a defendant to take a particular action. *Id.* (citing *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978)).

Although Plaintiff's Complaint sufficiently alleges a nonfrivolous claim, Plaintiff must show that Defendants acted with deliberate indifference towards a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). A medical professional acts with deliberate indifference only if the evidence shows that "no minimally competent professional would have so responded under those circumstances." *Sain*, 512 F.3d at 894-95. Or, stated differently, when the decision constitutes "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Petties*, 836 F.3d at 729.

A progress note dated February 19, 2026, indicates that Defendant Battles was instructed to "call ortho & make appt for low back pain." (Doc. 5 at p. 9). Plaintiff's medical records from his consultation with Dr. Podleski on February 19, 2026, do not indicate that Dr. Podleski recommended an MRI. *Id.* at pp. 11-13. At best, Plaintiff's allegations permit a reasonable inference that he disagrees with the course of treatment Defendants have offered, that Defendants chose a course of treatment different from that previously provided, or that he desired alternative

10

treatment, none of which are sufficient to show a constitutional violation. *Petties*, 836 F.3d at 729 ("Evidence that *some* medical professionals would have chosen a different course of treatment is insufficient to make out a constitutional claim.") (emphasis in original); *Harper v. Santos*, 847 F.3d 923, 928 (7th Cir. 2017) (prisoner is not entitled to dictate medical treatment); *Snipes*, 95 F.3d at 592 (disagreement with course of treatment not sufficient to show constitutional violation). Regarding Plaintiff's request for a low bunk permit, Plaintiff may submit a medical request slip or attend nurse sick call at his facility to request a low bunk permit.

The Court finds that Plaintiff has not shown a reasonable likelihood of success on the merits, at this stage. During discovery, Plaintiff may gather additional evidence to substantiate his deliberate indifference claim.

The Court, however, is not insensitive to Plaintiff's complaints. To ensure that prison officials are aware of them and to mitigate any issues concerning Plaintiff's access to medical treatment, the Court will forward a copy of this Order to Graham's warden.

**IT IS THEREFORE ORDERED:**

1)      According to the Court's Merit Review of Plaintiff's Complaint under 28 U.S.C. § 1915A, Plaintiff alleged sufficient facts to proceed on an Eighth Amendment claim against Defendants M. West, Megan Battles, Lindsay Boehm, and Dr. Berkman Gordon based on their alleged deliberate indifference to Plaintiff's serious medical needs. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

2)      Defendants S. Angel, Dr. Arvinder Arora, and K. McMann are DISMISSED WITHOUT PREJUDICE for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A. The Clerk is directed to TERMINATE Defendants Angel, Arora, and McMann.

3)      Plaintiff's Motion for Preliminary Injunction [5] is DENIED. The Clerk is DIRECTED to forward a copy of Plaintiff's Motion for Preliminary Injunction [5] and this Order to the warden at Graham Correctional Center.

4)      This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

5)      The Court will attempt service on Defendants by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants and will require Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

6)      Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' position. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered. If Defendants have not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.

7)      If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of Defendants' forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

8)      This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

9)      Defendants' counsel is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Defendants' counsel shall arrange the time for the deposition.

10)     Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

11)     Plaintiff shall be provided a copy of all pertinent medical records upon request.

12)     Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

13)     The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

*It is so ordered.*

Entered: June 15, 2026

s/Jonathan E. Hawley
U.S. District Judge